[No. B170874. Second Dist., Div. Eight. Jan. 26, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
OSCAR ANTONIO DIAZ, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part 1 of the Discussion.

COUNSEL

Donna L. Harris, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Linda C. Johnson and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**FLIER, J.**—Appellant Oscar Antonio Diaz was convicted of evasion of a pursuing peace officer while driving with "willful or wanton disregard for the safety of persons or property," in violation of Vehicle Code section 2800.2, subdivision (a) (section 2800.2(a)).[1]

Section 2800.2, subdivision (b) (section 2800.2(b)) permits the "willful or wanton disregard" for safety element of section 2800.2(a) to be established by "three or more violations that are assigned a traffic violation point count under Section 12810 . . . ." Appellant contends that his conviction must be reversed because (1) CALJIC No. 12.85, which is derived from

---

[1] All subsequent code references are to the Vehicle Code unless otherwise stated.

section 2800.2(b), contains a presumption which is precluded by *Sandstrom v. Montana* (1979) 442 U.S. 510 [61 L.Ed.2d 39, 99 S.Ct. 2450]; (2) under *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348], the jury should have been instructed that it had to find whether the unsafe operation of a vehicle was involved in the three traffic violations which were used for the purpose of section 2800.2(b); (3) his trial counsel was ineffective for not objecting to the instructions; (4) there was insufficient evidence that he drove with willful or wanton disregard for safety; (5) evidence that the car was "hot-wired" should not have been admitted; and (6) a mistrial should have been granted after the prosecutor insinuated that appellant had not legally purchased the car.

At our request, both sides have provided supplemental briefing on the question of whether one of the three underlying traffic offenses that is used for the purpose of section 2800.2(b) can be section 21806 (failure to yield the right of way for an emergency vehicle), when it is impossible to evade a police pursuit without also failing to yield the right-of-way.

We agree with respondent that section 2800.2(b) does not state a mandatory presumption, but simply defines one way in which the People may prove the willful or wanton disregard for safety element of the section 2800.2(a) offense. (*People v. Pinkston* (2003) 112 Cal.App.4th 387 [5 Cal.Rptr.3d 274] (*Pinkston*).) We reverse on the ground that a violation of section 21806 cannot be used as one of the three underlying traffic violations for the purpose of section 2800.2(b), where the defendant fails to yield to the pursuing peace officer whom the defendant is fleeing or attempting to elude. We therefore do not reach appellant's other issues.

## PROCEDURAL HISTORY

Count 1 of the information charged appellant with a felony, evasion of a pursuing peace officer with willful disregard for the safety of persons and property. (§ 2800.2(a).) Count 2 alleged a misdemeanor, driving with a license which was suspended due to a prior conviction for driving under the influence. (§ 14601.2, subd. (a).) The information also alleged that appellant had a prior conviction for driving with a suspended license. (§ 14601.1.) He admitted count 2 and the prior conviction prior to trial. After the jury found him guilty on count 1, he was sentenced to the midterm of two years in prison on count 1, with a concurrent sentence on count 2.

## FACTS

On June 9, 2003, California Highway Patrol Officer Les Huot and his partner were working in an area called "the Grapevine," bordered by

Bakersfield on the north and Newhall on the south. The officers were in uniform in a marked patrol car.

Around 1:20 a.m., Huot observed appellant in the fast lane of southbound traffic on Interstate Route 5 near Gorman. Appellant's Lexus was traveling 83 miles per hour. The speed limit was 65 miles per hour. Traffic was "light" or "light to moderate."

The officers drove behind appellant's car, activated their wigwag headlights and overhead colored lights, and attempted to pull him over. He initially moved across the four-lane highway to the shoulder and slowed down. He then drove back onto the freeway and worked his way to the No. 3 lane. The officers turned on their siren and followed him, continuing to use their flashing and colored lights. A 29-mile chase ensued. Appellant's speed varied from 55 to 75 miles per hour. He changed lanes frequently as he passed other cars. After the first 24 miles, another patrol car took over the pursuit. Appellant's car finally came to a stop when its tires were punctured near Magic Mountain Parkway by a spike strip which a different officer had placed on the road. Another car which was on the highway also ran over the spike strip.

There was no key in the ignition of the Lexus. It had been hot-wired, meaning that wires were connected under the steering wheel to start the car. In the car's center console was a handwritten piece of paper which indicated that appellant had purchased the Lexus for $1,500 from another man.

The officers testified that appellant violated two Vehicle Code sections during the pursuit, section 22349, subdivision (a) (exceeding the speed limit) and section 21806 (failing to yield to the right for an emergency vehicle). It was stipulated that he drove while his driving privilege was suspended, in violation of section 14601.2.

The officers further testified that high speed pursuits are dangerous because other cars on the road react unpredictably to the red lights and sirens. An accident could have resulted if a motorist pulled to the right at the same time that appellant was changing lanes. If appellant collided with another car, a vehicle might have hit one of the officers' cars. In general, night pursuits are dangerous due to decreased visibility. Additional risk factors here were curves, rises and falls in the mountainous road, and slow trucks. Passing traffic was a special danger for the officer who deployed the remote-controlled spike strip. However, there were no accidents or "near misses" during the pursuit, and the average speed of traffic at that hour was "in the seventies."

## DISCUSSION

1. *Presumption Issue**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

2. *Use of Section 21806 as an Underlying Offense*

A. *Introduction*

As indicated, section 21806 (failure to yield) was one of the three underlying traffic violations which was used under section 2800.2(b) to establish willful or wanton disregard for safety.

Like sections 2800.1, subdivision (a) (flight from a pursuing peace officer) and 2800.2(a) (flight from a pursuing peace officer with willful or wanton disregard for safety), section 21806 punishes a motorist who fails to respond appropriately to the visible red light and siren of an authorized emergency vehicle.[6]

Defense counsel unsuccessfully argued below that section 21806 could not be one of the three violations, because it was impossible to evade a pursuing police vehicle without also failing to yield, which reduced the number of violations the People had to prove from three to two. The prosecutor maintained that the section could be so utilized because it qualified for a point count under section 12810. According to her, use of the section meant "[y]ou always have one [violation], but we have to come up with three."

The jury was instructed, and the prosecutor argued to the jury, that the element of willful or wanton disregard for safety could be established through commission of either (1) the three specified Vehicle Code violations or (2) an act intentionally performed with conscious disregard for safety.[7]

---

*See footnote, *ante*, page 1484.

[6] Section 21806 states, in pertinent part: "Upon the immediate approach of an authorized emergency vehicle which is sounding a siren and which has at least one lighted lamp exhibiting red light that is visible, under normal atmospheric conditions, from a distance of 1,000 feet to the front of the vehicle, the surrounding traffic shall . . . do the following: [¶] (a)(1) . . . [T]he driver of every other vehicle shall yield the right-of-way and shall immediately drive to the right-hand edge or curb of the highway, clear of any intersection, and thereupon shall stop and remain stopped until the authorized emergency vehicle has passed."

[7] The prosecutor told the jury that a finding of the three Vehicle Code violations resulted in "willful or wanton disregard. Period." She further stated: "The definition of willful and wanton as I showed you before, includes those three Vehicle Code violations right there. You are done. As far as willful or wanton disregard goes, it includes these three violations. You could be done."

The evidence would support a finding that appellant did not yield the right-of-way for an emergency vehicle, as he drove many miles down the highway, while being pursued by a highway patrol car which had activated its emergency lights and siren. However, the fact that a violation of section 21806 occurred would not automatically mean that section 21806 could be used for the purpose of section 2800.2(b). We are aware of no previous case so utilizing section 21806. As the issue was raised by trial counsel below, we requested supplemental briefing on it.

### B. *Analysis*

Appellant argues that use of section 21806 as one of the three underlying violations to establish the element of willful or wanton disregard for safety violated his rights under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution, and article I, section 15 of the California Constitution, by impermissibly reducing the prosecutor's burden of proof with respect to the element of willful or wanton disregard for safety from three violations to two violations.

Respondent maintains that section 21806 could appropriately be used as one of the three underlying violations because (1) the language of section 2800.2(b) permits use of "three or more violations that are assigned a traffic violation point count under Section 12810"; and (2) section 21806 met the statutory definition of section 2800.2(b), through the catch-all provision of section 12810, subdivision (e), as failure to yield to an approaching emergency vehicle is a crime which involves the safe operation of a motor vehicle upon the highway. Respondent further argues that nothing in the legislative history underlying section 2800.2(b) shows an intention to exclude section 21806, and it would be inappropriate for this court to create such an exclusion.

■ The parties agree that it is impossible to violate section 2800.2(a) without also violating section 21806. "[I]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former." (*People v. Lopez* (1998) 19 Cal.4th 282, 288 [79 Cal.Rptr.2d 195, 965 P.2d 713]; see also *People v. Springfield* (1993) 13 Cal.App.4th 1674, 1679 [17 Cal.Rptr.2d 278].) Obviously, a motorist cannot flee from a pursuing peace officer's vehicle without also failing to pull over to the curb and stop for it.

■ The prosecution bears the burden of proving all elements of the offense, and must persuade the fact finder beyond a reasonable doubt of the facts necessary to establish those elements. (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 278 [124 L.Ed.2d 182, 113 S.Ct. 2078]; *In re Winship* (1970) 397

U.S. 358, 364 [25 L.Ed.2d 368, 90 S.Ct. 1068].) As the People recognized below, allowing failure to yield to be used as one of the three violations, when it is necessarily included in the offense of evading pursuit, would mean there is automatically one qualifying violation for the purpose of section 2800.2(b) whenever the People have proven the offense of evading pursuit. In other words, the People are given a "freebie," and their burden is reduced from three violations to two violations. We do not believe that is what the Legislature intended when it specified in section 2800.2(b) that "three or more violations that are assigned a traffic violation point count under Section 12810" can be used to establish the element of willful or wanton disregard for safety.

The legislative history, though sparse, supports our conclusion. An earlier version of the bill which enacted section 2800.2(b) specified "three or more moving violations," rather than three or more point-count violations under section 12810. (Legis. Counsel's Dig., Assem. Bill No. 1999 (1995–1996 Reg. Sess.) 2d reading as amended Apr. 29, 1996.) There was thus a continuous concern that there be at least three underlying violations in order to establish the element of willful or wanton disregard for safety. Allowing section 21806 to be used as one of the three violations reduced the prosecution's burden from three to two.

We therefore hold that a violation of Vehicle Code section 21806 cannot be utilized as one of the three traffic violations to establish the element of willful or wanton disregard for the safety of persons or property under Vehicle Code section 2800.2(b). In light of our holding, it is not necessary to address appellant's contentions that use of section 21806 as one of three offenses to establish willful or wanton disregard for safety violates his rights under the United States and California Constitutions.

## C. *Prejudice*

On the facts of this case, we cannot find that the error was harmless. (*Chapman v. California* (1967) 386 U.S. 18, 36 [17 L.Ed.2d 705, 87 S.Ct. 824].)

The jurors were instructed by the judge, and told by the prosecutor, that the element of willful or wanton disregard for safety could be established either through the three underlying violations or based on the intentional performance of an act with conscious disregard for safety.

"When a legally erroneous theory of conviction is presented to the jury, reversal is required unless, on the record made at trial, the reviewing court can determine that the conviction actually, if not solely, rests on a

legally proper theory." (*People v. Hansen* (1994) 9 Cal.4th 300, 327–328 [36 Cal.Rptr.2d 609, 885 P.2d 1022] (conc. & dis. opn. of Mosk, J.).)

Reversal is required here, as it cannot be determined beyond a reasonable doubt that appellant's conviction did not rest upon the erroneous instruction that a violation of section 21806 could be used as one of the three Vehicle Code violations which establish the element of willful or wanton disregard for safety. (*People v. Swain* (1996) 12 Cal.4th 593, 607 [49 Cal.Rptr.2d 390, 909 P.2d 994].)

Respondent maintains that no reasonable jury could have found that appellant drove safely.

The issue is a close one. There were facts which could support a finding of willful or wanton disregard for safety. Appellant drove for 29 miles at night along curving mountainous roads, at speeds between 55 and 75 miles per hour, and changed lanes frequently as he passed cars and trucks. We recognize the danger to other vehicles on the road and the additional risks created by the need to use a spike strip to stop appellant's car. However, the evidence presented a factual issue on the safety of appellant's driving. There were no accidents or "near misses" during the pursuit. He drove around 1:20 a.m., in light or light to moderate traffic, at speeds which approximated that of other vehicles on the road. Indeed, his counsel argued to the jury that, while appellant should have pulled over for the officers, the way he drove did not establish the element of willful or wanton disregard for safety.

Appellant's driving was very different from that of the defendants in the other section 2800.2(a) cases cited in this opinion. For example, in *Pinkston, supra,* 112 Cal.App.4th 387, 390–391, the defendant drove 60 miles per hour in a residential zone, ran through red lights, failed to stop at posted stop signs, passed a vehicle on the right shoulder, drove with a suspended license, and damaged property when his car struck a retaining wall. In *People v. Sewell* (2000) 80 Cal.App.4th 690, 693 [95 Cal.Rtpr.2d 600], the "defendant led a pursuing police officer on a wild, high-speed chase that encompassed several moving violations and that culminated in the crash of defendant's car and the death of defendant's passenger." In *People v. Springfield, supra,* 13 Cal.App.4th 1674, the defendant ran 12 to 15 stop signs while driving through a residential neighborhood.

Because of the instructions, the argument to the jury, and the factual issue presented by the evidence, erroneous utilization of section 21806 as one of the three underlying violations for the purpose of section 2800.2(b) constituted reversible error.

## DISPOSITION

The judgment is reversed.

Cooper, P. J., and Rubin, J., concurred.

A petition for a rehearing was denied February 25, 2005, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied April 20, 2005. George, C. J., did not participate therein.