Filed 5/10/22  P. v. Hernandez CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ERNIE HERNANDEZ,<br><br>    Defendant and Appellant. | A164253<br><br>(Tulare County Super. Ct.<br> No. PCF379033) |

Defendant Ernie Hernandez appeals from his conviction of evading an officer with willful or wanton disregard for the safety of persons or property, raising a claim of instructional error.  We agree with Hernandez that the instruction given to the jury misstated one of the ways "willful or wanton disregard" may be proved, but we find the error harmless.[1]

After the parties completed their appellate briefing, Penal Code section 1170 was amended by Senate Bill No. 567 (2021-2022 Reg. Sess.) (S.B. No. 567), and we requested supplemental briefing on whether the new law affects

---

[1] We note that in his opening brief, Hernandez also challenged part of his sentence, arguing concurrent terms for certain counts were unauthorized under Penal Code section 654.  In his reply, however, Hernandez concedes imposition of concurrent terms was proper.  Given his concession, we do not consider this argument further.

this appeal. The parties agree Hernandez is entitled to resentencing under S.B. No. 567.

We remand for resentencing under S.B. No. 567 and otherwise affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 26, 2019, Porterville police officer Justin Ellestad was on duty in uniform in a marked patrol vehicle. Around 10:00 a.m., he noticed a gray Honda Accord and began trailing it. The car raised his suspicion because it made an evasive turn, and then he noticed the driver's side mirror was broken. Ellestad could see that the driver was the only occupant of the car, and he focused his attention on him. Later, he reported to dispatch that the driver appeared to be a "HMA.[2] Looked like he had a beard. Black hat."

Ellestad turned on his emergency lights to initiate a traffic stop, and the Accord pulled over near the intersection of Theta and Villa Street. Ellestad parked behind the stopped car and began to approach. The driver of the Accord then drove off, heading north on Villa. Ellestad estimated the car was going about 35 miles per hour in a residential neighborhood where the speed limit was 25 miles per hour. The Accord did not stop at a stop sign at the intersection with Mulberry where it turned eastbound.

Ellestad pursued the car and turned his siren on. The Accord continued traveling at about 45 miles per hour in a 25 mile per hour zone. The Accord ran a stop sign at the intersection of Mulberry and Jaye Street and turned northbound on Jaye. The Accord failed to stop at another stop sign as it traveled eastbound on Westfield and northbound on Main Street. Ellestad testified the driver of the Accord was driving "[e]rratically"; when he ran the stop signs, the driver "would go into making long turns into oncoming

---

2 We infer "HMA" stands for Hispanic male adult.

2

traffic," and the driver was on the wrong side of the road when he was on Main Street. Ellestad estimated the driver was driving approximately 70 or 80 miles per hour on Main Street. At that point, Ellestad decided to discontinue the pursuit. Within a few hours of the attempted traffic stop and pursuit, the Accord was found abandoned in the middle of an orchard east of Lindsay, California.

Video of the pursuit recorded by Ellestad's body camera was played for the jury.

Ellestad had noted the license plate number of the Accord, and DMV records showed the registered owner was Yesica Mendoza. The same day, Ellestad met with witnesses Mendoza and Maria Hernandez. Based on information he received from them, Ellestad looked up a booking photo of Hernandez and recognized him as the driver of the Accord he had pursued that morning.

Mendoza is the mother of Hernandez's children. (Mendoza referred to Hernandez as her "baby daddy," and Hernandez's grandmother referred to Mendoza as his "girlfriend.") The day of the attempted traffic stop and pursuit, Mendoza picked up Hernandez around 6:00 a.m. and drove him to Strathmore. She and Hernandez argued about their relationship. In Strathmore, Hernandez took the key to Mendoza's car and got in the driver's seat. With Hernandez driving, they headed to Porterville. Mendoza and Hernandez continued to argue, and Mendoza jumped out of her car and hid in some orange groves.[3]

_____

[3] At trial, Mendoza testified that, after she jumped out of the car, she saw Hernandez park her car at an apartment complex and then get picked up by another car, and she denied that she ever said he stole her car. During the investigation, however, Mendoza did not tell the police that Hernandez

3

Maria Hernandez is Hernandez's grandmother, and he stayed with her at her home in Strathmore. On March 26, 2019, Maria told Ellestad she had seen Mendoza's car parked outside her home around 10:00 or 10:30 that morning (that is, shortly after the attempted traffic stop and pursuit).[4]

The Tulare County District Attorney charged Hernandez with willful driving of a vehicle on a highway in the opposite direction of lawful traffic during flight from a pursing officer (Veh. Code, § 2800.4; count 1), evading an officer with willful disregard for safety of persons or property (*id.*, § 2800.2; count 2), and other offenses unrelated to the events of March 26, 2019.[5] It was also alleged that Hernandez had various prior serious or violent felony convictions and had served prior prison terms for felony convictions.

The matter proceeded to a jury trial. The defense theory for counts 1 and 2 (as well as counts 6 and 7) was that the prosecution failed to prove identity and there had been a "rush to judgment" by law enforcement. In her closing, defense counsel argued Officer Ellestad's identification of Hernandez as the driver of the Accord that sped off during the attempted traffic stop was "the result of a mistake." She asserted the officer saw the driver "from a distance for a couple of seconds" and "all he really saw was tattoos and

---

parked her car after she jumped out of it, and she told an officer she had not seen Hernandez since he "stole [her] car."

[4] At trial, Maria testified that she could not remember anything she told the police on March 26, 2019. Video from Ellestad's body camera, however, was played for the jury, and it showed that Maria told Ellestad she saw Mendoza's car parked outside around 10:00 or 10:30.

[5] The other charges were three counts of failure to appear in court after release on his own recognizance (Pen. Code, § 1320, subd. (b); counts 3–5), unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a); count 6), and misdemeanor possession of burglar's tools (Pen. Code, § 466; count 7). Further undesignated statutory references are to the Vehicle Code.

4

clothing, the clothing that other people wear on a regular basis." She noted that Ellestad told dispatch the driver had a beard, but Mendoza testified Hernandez was clean shaven in March 2019. Defense counsel concluded, "So, as you consider the evidence, again, make sure that you pay attention to the distance, the duration of the observations and any other basis for what the officer saw. Because I think that when you consider that, I think there is reasons to believe that what the officer saw was not really what they are saying they saw. It was actually a mistake based on what they wanted to see."

The jury found Hernandez guilty of evading an officer with willful disregard for safety of persons or property (count 2) and not guilty of driving in a direction opposite of lawful traffic during flight from a pursuing officer (count 1).[6] As to the other offenses unrelated to the attempted traffic stop and pursuit on March 26, the jury also found Hernandez guilty of counts 3 though 5 (failure to appear) and not guilty of counts 6 (unlawful taking of a vehicle) and 7 (possession of burglar's tools). In a bifurcated proceeding, the trial court found true the allegations of various prior convictions and prison terms.

## DISCUSSION

A.    *Jury Instruction*

Hernandez contends the instruction given to the jury on evading an officer with willful or wanton disregard for safety of persons or property in violation of section 2800.2 was incorrect and had the effect of lowering the

---

[6] The jury was instructed that counts 1 and 2 were charged as alternative offenses and, "If you find the defendant guilty of one of these charges, you must find him not guilty of the other. You cannot find the defendant guilty of both." This explains why the jury found Hernandez guilty of count 2 and not guilty of count 1.

prosecution's burden of proof. He further argues his trial counsel provided ineffective assistance in failing to object. We agree the jury instruction misdescribed one of the ways to establish the element of "willful or wanton disregard," but we find no prejudice given the evidence and argument presented at trial.

1.　Section 2800.2

Section 2800.1 makes it a misdemeanor to willfully flee or otherwise attempt "to elude a pursuing peace officer's motor vehicle," "while operating a motor vehicle." Under section 2800.2, evading an officer in violation of section 2800.1 may be punished as a felony when "the pursued vehicle is driven in a *willful or wanton disregard for the safety of persons or property*." (§ 2800.2, subd. (a), italics added.)

Generally, "[a] person acts with wanton disregard for safety when (1) he or she is aware that his or her actions present a substantial and unjustifiable risk of harm, (2) and he or she intentionally ignores that risk. The person does not, however, have to intend to cause damage." (CALCRIM No. 2181; see *People v. Barber* (2020) 55 Cal.App.5th 787, 802–808 [approving identical wording for a jury instruction on reckless driving, which is defined under section 23103, subdivision (a), as driving a vehicle upon a highway "in willful or wanton disregard for the safety of persons or property"].)

In addition, for purposes of section 2800.2, "a willful or wanton disregard for the safety of persons or property *includes, but is not limited to*, driving while fleeing or attempting to elude a pursuing peace officer during which time either [1] three or more violations that are assigned a traffic violation point count . . . occur, or [2] damage to property occurs." (§ 2800.2, subd. (b), italics added.)

6

Thus, there are three different ways to prove the element of "willful or wanton disregard for the safety of persons or property" under section 2800.2. The prosecution can show (1) the defendant knew his actions presented a substantial and unjustifiable risk of harm and intentionally ignored the risk, (2) the defendant committed at least three traffic violations during the evasion, or (3) damage to property occurred during the evasion.

2. Jury Instruction Given

Here, the jury was instructed with a version of CALCRIM No. 2181 on evading an officer under sections 2800.1 and 2800.2, which explained the three different ways the element of "willful or wanton disregard" could be established. It provided in part: "A person acts with *wanton disregard for safety* when (1) he or she is aware that his or her actions present a substantial and unjustifiable risk of harm, (2) he or she intentionally ignores that risk. The person does not, however, have to intend to cause damage.

"Driving with willful or wanton disregard for the safety of persons or property *includes, but is not limited to*, causing damage to property while driving or committing three or more violations that are each assigned a traffic violation point." (Italics added, and original italics deleted.)

The instruction then enumerated certain traffic violations that could be considered as predicate violations to establish willful or wanton disregard: "[1] Driving over the posted speed limit, [2] failing to stop at stop signs, [and 3] *failure to yield* are each assigned a traffic violation point." (Italics added.)

Failure to yield in violation of section 21806 was also charged as a lesser offense of count 2, and the jury was instructed that Hernandez could not be convicted of both the greater and lesser crime for the same conduct.[7]

---

[7] Section 21806 generally requires drivers to "yield the right-of-way and . . . immediately drive to the right-hand edge or curb of the highway, clear of

7

3. Preservation of Claim of Instructional Error

Hernandez argues the instruction given on evading an officer in violation of section 2800.2 incorrectly described the law and he received ineffective assistance of counsel when defense counsel failed to object to the erroneous instruction. He makes the second argument to forestall a response that his claim of instructional error was forfeited by defense counsel's failure to object. "[B]ut a trial court in a criminal case is required—with or without a request—to give correct jury instructions on the general principles of law relevant to issues raised by the evidence." (*People v. Mutuma* (2006) 144 Cal.App.4th 635, 640.) Further, "claims of instructional error are reviewable on appeal to the extent they implicate a defendant's substantial rights. (*People v. Prieto* (2003) 30 Cal.4th 226, 247; [Pen. Code,] § 1259.)" (*People v. Famalaro* (2011) 52 Cal.4th 1, 35.)

Since "a defendant need not object to preserve a challenge to an instruction that incorrectly states the law and affects his or her substantial rights (*People v. Palmer* (2005) 133 Cal.App.4th 1141, 1156), we will address Hernandez's claim of instructional error without considering whether he also received ineffective assistance of counsel.

4. The Instruction Misdescribed One of the Ways an Element of the Offense Could be Established

Hernandez argues the instruction on evading an officer was erroneous because failure to yield was listed as one of the three predicate traffic violations that could prove the element of willful or wanton disregard for safety. This argument has merit.

---

any intersection, and . . . remain stopped . . ." when "an authorized emergency vehicle which is sounding a siren and which has at least one lighted lamp exhibiting red light that is visible" approaches.

In *People v. Diaz* (2005) 125 Cal.App.4th 1484, 1491 (*Diaz*), the Court of Appeal held that failure to yield in "violation of Vehicle Code section 21806 cannot be utilized as one of the three traffic violations to establish the element of willful or wanton disregard for the safety of persons or property under Vehicle Code section 2800.2(b)." The court reasoned that, because failure to yield in violation of section 21806 is a necessarily included offense of evading an officer with willful disregard in violation of section 2800.2, allowing failure to yield to be used as one of the three traffic violations has the effect of giving the prosecution "a 'freebie,' and [the prosecution's] burden is reduced from three violations to two violations." (*Id.* at p. 1491.) The *Diaz* court concluded, "We do not believe that [i.e., two violations rather than three] is what the Legislature intended when it specified in section 2800.2(b) that 'three or more violations that are assigned a traffic violation point count' can be used to establish the element of willful or wanton disregard for safety." (*Ibid.*)

In *Diaz*, it was error for the trial court to instruct the jury that failure to yield in violation of section 21806 could be used as one of the three traffic violations that could prove the willful-or-wanton-disregard element of evading an officer in violation of section 2800.2. (*Diaz, supra*, 125 Cal.App.4th at p. 1491.) Likewise, in this case, it was error for the trial court to instruct the jury that it could use failure to yield as one of the three traffic violations to establish "willful or wanton disregard for the safety of persons or property."[8]

---

[8] Indeed, the bench notes for CALCRIM No. 2181 make this very point, citing *Diaz*, under the heading "Lesser Included Offenses."

5.      The Error Was Harmless

A jury instruction that misdescribes an element of an offense is harmless only if "it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " (*People v. Harris* (1994) 9 Cal.4th 407, 424 (*Harris*), quoting *Chapman v. California* (1967) 386 U.S. 18, 24.)  " 'To say that an error did not contribute to the verdict is . . . to find that error unimportant *in relation to everything else the jury considered on the issue in question, as revealed in the record.*' " (*Harris* at p. 426, quoting *Yates v. Evatt* (1991) 500 U.S. 391, 403.)  A reviewing court "must ultimately look to the *evidence* considered by [the] defendant's jury under the instructions given in assessing the prejudicial impact or harmless nature of the error." (*Harris* at p. 428.)

In *Harris*, the offense at issue was robbery and the instructional error was a misstatement regarding "one of two possible factual *theories* by which [the] element [of 'taking' for robbery] could be satisfied"; "[n]o instructional error occurred in connection with the alternate theory by which the element of taking could be satisfied." (*Harris*, *supra*, 9 Cal.4th at p. 429.)  The *Harris* court found the evidence supporting the alternate (and correctly described) theory for establishing the element of taking to be " 'overwhelming' " and concluded, "the evidence . . . is 'of such compelling force as to show beyond a reasonable doubt' that the erroneous instruction 'must have made no difference in reaching the verdict obtained.' " (*Id.* at p. 431.)

In contrast, in *Diaz*, the court found reversal was required because it could not "be determined beyond a reasonable doubt that [defendant Diaz]'s conviction did not rest upon the erroneous instruction that a violation of section 21806 could be used as one of the three Vehicle Code violations which establish the element of willful or wanton disregard for safety." (*Diaz, supra*,

10

125 Cal.App.4th at p. 1492.) In that case, CHP officers observed Diaz driving a Lexus at 83 miles per hour on an interstate freeway at 1:20 a.m. The officers turned on their lights to attempt to pull him over. Diaz moved over to the shoulder and slowed down but then drove back onto the freeway. The officers turned on their siren and a 29-mile chase ensued. The officers testified Diaz violated two Vehicle Code sections during the pursuit, (1) exceeding the speed limit and (2) failing to yield in violation of section 21806. (*Id*. at p. 1488.)

On the question whether the instructional error was harmless beyond a reasonable doubt, the *Diaz* court observed the issue was "a close one." (*Diaz, supra*, 125 Cal.App.4th at p. 1492.) The court reasoned: "There were facts which could support a finding of willful or wanton disregard for safety. [Diaz] drove for 29 miles at night along curving mountainous roads, at speeds between 55 and 75 miles per hour, and changed lanes frequently as he passed cars and trucks. We recognize the danger to other vehicles on the road . . . . However, the evidence presented a factual issue on the safety of [Diaz]'s driving. There were no accidents or 'near misses' during the pursuit. He drove around 1:20 a.m., in light or light to moderate traffic, at speeds which approximated that of other vehicles on the road. Indeed, *his counsel argued to the jury* that, while [Diaz] should have pulled over for the officers, *the way he drove did not establish the element of willful or wanton disregard for safety*." (*Ibid*., italics added.) The court contrasted Diaz's conduct with other cases where, for example, "the defendant drove 60 miles per hour in a residential zone, ran through red lights, failed to stop at posted stop signs, passed a vehicle on the right shoulder, drove with a suspended license, and damaged property when his car struck a retaining wall," "the 'defendant led a pursuing police officer on a wild, high-speed chase that encompassed several

11

moving violations and that culminated in the crash of defendant's car and the death of defendant's passenger,' " or "the defendant ran 12 to 15 stop signs while driving through a residential neighborhood." (*Ibid.*)

If *Diaz* presented a "close" case on the question of harmless error, Hernandez's case is not. Here, the uncontested evidence showed that Hernandez drove erratically in a residential neighborhood in the middle of the day (10:00 a.m.); he drove 45 miles per hour in a residential area with a 25 mile per hour speed limit, drove through at least three stop signs without stopping, drove on the wrong side of the road, and reached speeds of up to 80 miles per hour while driving in the opposite direction of traffic. His driving on Main Street (80 miles per hour going the wrong way) was so dangerous, Ellestad decided to discontinue his pursuit of Hernandez. This was overwhelming evidence establishing the element of wanton disregard for safety under the theory of awareness of "a substantial and unjustifiable risk of harm" and intentionally ignoring that risk, regardless of the other two ways that element can be established.

Further, defense counsel in this case, unlike counsel in *Diaz*, never argued that the way the driver of the Accord drove did not establish willful or wanton disregard for safety. (See *People v. Flood* (1998) 18 Cal.4th 470, 504–505 [instructional error on an element may be harmless beyond a reasonable doubt where the defendant does not offer any evidence on the element, does not dispute the prosecution's evidence, and does not argue the prosecution did not prove the element beyond a reasonable doubt].) Nor did the prosecution in this case ever argue that Hernandez's failure to yield could be considered in finding he committed three traffic violations. In fact, the prosecutor did not rely on the three-traffic-violations theory for establishing the element of "willful or wanton disregard" at all. In closing, the prosecutor argued,

12

"[Hernandez] was driving at 10:00 o'clock in the morning. There is pedestrians out. There is other cars out. [¶] The jury instruction describes wanton disregard for safety. He or she is aware that his or her actions present a substantial and justifiable risk of harm. Blowing through four stop signs, 70 to 80 miles per hour on Main Street. That's a safety issue for pedestrians and drivers."

In short, we believe this case is more like *Harris* than *Diaz*. Given the uncontested evidence of Hernandez's dangerous driving during the pursuit and the arguments made by counsel, we conclude " 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " (*Harris, supra*, 9 Cal.4th at p. 424.)

B.    *S.B. No. 567*

S.B. No. 567 amended Penal Code section 1170, effective January 1, 2022, so that it now provides, "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (Pen. Code, § 1170, subd. (b)(2).)

Here, the trial court imposed upper terms for counts 2, 4, and 5. The parties agree that S.B. No. 567 applies retroactively to this case and that the matter should be remanded for resentencing under current Penal Code section 1170. We agree with the parties and remand the matter to the trial court for resentencing. (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1038–1039 [remanding for resentencing under Penal Code section 1170 as amended by S.B. No. 567].)

## DISPOSITION

The sentence is vacated and the matter is remanded to the trial court to sentence defendant under Penal Code section 1170 as amended by S.B. No. 567.  The judgment is otherwise affirmed.

_____

Miller, J.

WE CONCUR:


_____

Richman, Acting P.J.


_____

Stewart, J.


A164253, *People v. Hernandez*