Filed 2/27/26  P. v. Pollard CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D085280 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD302964) |
| MARQUIS TERRELL POLLARD, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Runston G. Maino, Judge.  Affirmed.

Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General,  and Laura Baggett, Deputy Attorney General, for Plaintiff and Respondent.

# I. INTRODUCTION

A jury found defendant Marquis Terrell Pollard guilty of felony reckless evasion of a police officer (Veh. Code,[1] § 2800.2, subd. (a)) and the trial court sentenced him to two years in prison.[2] Pollard's appointed appellate counsel filed an opening brief raising no arguable issues pursuant to *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738. Pollard did not file a supplemental brief on his own behalf.

On our independent review of the record, we found this arguable issue on appeal and requested supplemental briefing on it: Whether the trial court prejudicially erred by instructing the jury that a violation of section 21806, subdivision (a)(1)[3] can be used as one of the three underlying traffic violations for purposes of establishing a violation of section 2800.2, subdivision (b). (See *People v. Diaz* (2005) 125 Cal.App.4th 1484, 1487 (*Diaz*) ["We reverse on the ground that a violation of section 21806 cannot be used as one of the three underlying traffic violations for the purpose of section 2800.2[, subdivision ](b), where the defendant fails to yield to the pursuing peace officer whom the defendant is fleeing or attempting to elude."].)

---

[1]    Further unspecified statutory references are to the Vehicle Code.

[2]    The jury found Pollard not guilty of unrelated charges for attempted robbery and vandalism. We do not discuss those charges here.

[3]    Section 21806, subdivision (a), states in relevant part: "Upon the immediate approach of an authorized emergency vehicle which is sounding a siren and which has at least one lighted lamp exhibiting red light that is visible . . . the surrounding traffic shall[:] . . . [¶] (1) . . . yield the right-of-way and shall immediately drive to the right-hand edge or curb of the highway, clear of any intersection, and thereupon shall stop and remain stopped until the authorized emergency vehicle has passed."

In their supplemental briefs, the parties agree the trial court's jury instruction was erroneous under *Diaz* but disagree about whether the error was prejudicial under the "beyond a reasonable doubt" standard announced in *Chapman v. California* (1967) 386 U.S. 18. Pollard contends the error was prejudicial; the People maintain it was not.

Based on our review of the entire record, we conclude the trial court erred, but that the error was harmless. Accordingly, we affirm the judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Around 7:00 a.m. on April 4, 2024, police responded to a call of a person (identified at trial as Pollard) acting strangely in the employee parking lot of a Mercedes-Benz dealership in Kearny Mesa. San Diego Police Department Officer David Kuhl responded as the primary officer and Officer Elspeth Peterson responded as Officer Kuhl's backup. Both officers were wearing distinctive uniforms and driving marked patrol cars.

When the officers arrived, the reporting party pointed out Pollard in a Black Infiniti G35. Pollard began driving away from the dealership. The officers testified they did not yet have grounds to detain Pollard, so they started to leave the area and just "happened to be going the same direction" as Pollard. At a nearby intersection, Pollard made a U-turn against the red traffic signal. Officer Kuhl immediately activated his patrol car's overhead lights and "intermittent siren" while about six feet behind Pollard. The officer followed Pollard. Officer Peterson followed Officer Kuhl.

Pollard pulled into the parking lot of a Maserati dealership and slowly drove through it. Officer Kuhl followed with his lights and intermittent siren activated. Pollard exited the parking lot, entered the street, and then entered the parking lot of the Mercedes-Benz dealership. In addition to using

3

his lights and intermittent siren, Officer Kuhl addressed Pollard through the patrol car's PA system, identifying himself as a police officer and instructing Pollard to stop. At trial, Officer Kuhl identified Pollard's failure to stop as a violation of section 21806.

As Pollard drove slowly over a speedbump in the parking lot, Officer Kuhl maneuvered around and stopped in front of Pollard. Officer Kuhl got out of his car, identified himself as a police officer, and ordered Pollard to turn off his car. Pollard drove around the parked patrol car. Pollard then made an unsafe left-hand turn out of the parking lot, causing at least one vehicle to slam on its brakes to avoid a collision. At this point, Officer Kuhl activated his constant siren.

Pollard ran "a red left-turn arrow" on the traffic signal at the intersection to the southbound onramp to highway 163. Officer Kuhl testified this was a traffic violation. Freeway traffic was "light, but getting heavier." Pollard accelerated away at about 80 miles per hour. Officer Kuhl testified this was both a traffic violation and "concerning behavior" because "there's increased opportunity for a collision and less reaction time if something happens." Officer Peterson "was a significant distance" behind Officer Kuhl at this point and testified that she "only saw very short glimpses of the [Infiniti]," "eventually lost sight of" it, and could not "really recall exactly what movements [it] was making" or whether Officer Kuhl's siren was on. Officer Peterson clarified that she "couldn't personally see how the Infiniti was driving on [highway] 163" and her "eyes [were] really on what Officer Kuhl was doing."

Pollard transitioned to southbound Interstate 805 and accelerated to about 125 miles per hour. Officer Kuhl testified this was an additional traffic

4

violation.[4]  Pollard's driving was concerning to Officer Kuhl because Pollard "was having to go around traffic and weave around traffic."  Officer Kuhl testified Pollard changed lanes "from the Number 1 lane all the way across to the Number 4 lane" without using a turn indicator, and "was passing on the right shoulder and pulling away from [Officer Kuhl] still."  Officer Kuhl characterized Pollard's driving as "inherently dangerous."  Officer Peterson testified she did not "notice any kind of driving onto the shoulder" and could not recall "any kind of weaving in and out of traffic."

"At this point in the pursuit," Officer Kuhl "weighed the public safety . . . and decided to terminate the pursuit."  He testified Pollard's numerous traffic violations and manner of driving "was inherently dangerous, and it was a threat to the public."

Throughout the pursuit, Officer Kuhl had been announcing over his radio what was happening.  About 30 or 40 minutes after the pursuit ended, another police officer in the Mid-City Division detained Pollard and radioed to Officer Kuhl.  Officer Kuhl responded to the area and saw Pollard and his car.  Pollard was taken into custody without incident.

The pursuit was recorded on Officer Peterson's body-worn camera and the footage was played at trial.[5]

The defense presented no evidence.

---

[4]     Officer Peterson testified there are separate traffic violations for driving faster than 65 miles per hour and driving faster than 100 miles per hour.

[5]     We have reviewed the footage, which primarily shows the interior of Officer Peterson's patrol car.  Officer Kuhl's patrol car and Pollard's Infiniti are generally not visible during the pursuit footage.

## B. Procedural Background

As relevant here, the People charged Pollard with one count of felony reckless evasion (§ 2800.2, subd. (a)).  The jury found him guilty.  The trial court sentenced Pollard to prison for the middle term of two years.

## III.  DISCUSSION

As noted, Pollard's appointed appellate counsel initially filed a brief under *Wende* and *Anders* raising no arguable issues.  However, based on our independent review of the record we requested supplemental briefing on an arguable issue of instructional error.  Having received and reviewed the parties' supplemental briefing, we conclude the trial court erred but that the error was harmless.

## A. Relevant Legal Principles

Generally speaking, a person commits misdemeanor simple evasion of a peace officer under section 2800.1, subdivision (a) if he or she willfully drives with the intent to evade a uniformed peace officer who is driving a marked vehicle that is exhibiting a visible front-facing red lamp and sounding a siren as may be reasonably necessary.  (§ 2800.1, subd. (a)(1)–(4).)[6]  A person commits felony reckless evasion under section 2800.2 when her or she commits the lesser included offense of simple evasion under section 2800.1

---

[6]    Section 2800.1, subdivision (a), provides in full:  "Any person who, while operating a motor vehicle and with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle, is guilty of a misdemeanor . . . if all of the following conditions exist:  [¶]  (1) The peace officer's motor vehicle is exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp.  [¶]  (2) The peace officer's motor vehicle is sounding a siren as may be reasonably necessary.  [¶]  (3) The peace officer's motor vehicle is distinctively marked.  [¶]  (4) The peace officer's motor vehicle is operated by a peace officer . . . and that peace officer is wearing a distinctive uniform."

6

while "driv[ing] in a willful or wanton disregard for the safety of persons or property." (§ 2800.2, subd. (a); see *People v. Hudson* (2006) 38 Cal.4th 1002, 1007; *People v. Springfield* (1993) 13 Cal.App.4th 1674, 1679–1680.)

The "willful or wanton disregard" element of felony reckless evasion is the primary element at issue here. (§ 2800.1, subd. (a).) It can be established in several ways. First, the element can be satisfied by reference to the definitions of the words "willful" and "wanton," which include consciousness of one's conduct, intent to do the act in question, realization of probable injury to another, and reckless disregard of those consequences. (See *People v. Weddington* (2016) 246 Cal.App.4th 468, 486; CALCRIM No. 2181.) We will refer to this as the "definitional theory."

Alternatively, section 2800.2, subdivision (b) defines two circumstances that "automatically constitute[] willful or wanton disregard for the safety of persons or property." (*People v. Fuentes* (2022) 78 Cal.App.5th 670, 676.) These circumstances are (1) "committing at least three traffic 'point' violations while the driving occurs," (hereafter, the violation-based theory), and (2) "[d]amaging property." (*Ibid.*; see § 2800.2, subd. (b).)[7]

In *Diaz*, *supra*, 125 Cal.App.4th 1484, the court held in connection with the violation-based theory that "a violation of . . . section 21806 [i.e., failing to yield to an emergency vehicle] cannot be utilized as one of the three traffic violations to establish the element of willful or wanton disregard for the safety of persons or property under . . . section 2800.2[, subdivision ](b)." (*Id.* at p. 1491.) The court reasoned that because "it is impossible" (*id.* at

---

[7] Section 2800.2, subdivision (b) states: "For purposes of this section, a willful or wanton disregard for the safety of persons or property includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a traffic violation point count under Section 12810 occur, or damage to property occurs."

p. 1490) to commit reckless evasion without also failing to yield to an emergency vehicle, "allowing failure to yield to be used as one of the three violations . . . would mean there is automatically one qualifying violation . . . whenever the People have proven the offense of evading pursuit. In other words, the People are given a 'freebie,' and their burden is reduced from three violations to two violations" (*id*. at p. 1491).

## B. Background

The trial court instructed the jury regarding the charged offense of felony reckless evasion and the lesser included offense of misdemeanor simple evasion. As to the greater offense, the trial court instructed the jury regarding two of the three possible ways of establishing recklessness.

As to the definitional theory, the court instructed the jury:

> To prove that the defendant is guilty of this crime, the People must prove that:
>
> [¶] . . . [¶]
>
> During the pursuit, the defendant drove with willful or wanton disregard for the safety of persons of property.
>
> [¶] . . . [¶]
>
> Someone commits an act willfully when he does it willingly or on purpose. It is not required that he intend to break the law, hurt someone else, or gain any advantage.
>
> A person acts with wanton disregard for safety when (1) he is aware that his actions present a substantial and unjustifiable risk of harm, and (2) he intentionally ignores that risk. The person does not, however, have to intend to cause damage.

Regarding the violation-based theory, the court instructed the jury:

8

To prove that the defendant is guilty of this crime, the People must prove that:

[¶] . . . [¶]

During the pursuit, the defendant committed three or more violations, each of which would make the defendant eligible for a traffic violation point[.]

[¶] . . . [¶]

[S]ection 21453[, subdivision ](c) [i.e., running a "red arrow signal"], . . . section 21806[, subdivision ](a)(l) [i.e., failing to yield to an emergency vehicle], . . . section 22349[, subdivision ](a) [i.e., driving "at a speed greater than 100 miles per hour"], . . . section 22348[, subdivision ](b) [i.e., driving "at a speed greater than 65 miles per hour], and . . . section 21658 [i.e., unsafe lane change] are each assigned a traffic violation point.

During closing argument, the prosecutor argued Pollard met both the definitional and violation-based theories. As to the definitional theory, the prosecutor argued:

Defendant knew everything he was doing. He was disregarding the public safety when he made that U-turn on the red light, when he refused to pull over, when he was driving erratically, almost hitting the pedestrian car [*sic*], when he drove 80 miles per hour on the 163, now going almost over 120 miles per hour on the 805 during commute time.

He drove on the right shoulder. He drove in and out of lanes. The defendant disregarded all public safety, and he did that intentionally. He was the one behind the wheel, making all of these moves. He was the one behind the wheel, making all of these decisions. Instead of just pulling over after a U-turn, a minor traffic violation, he decided to put every person on the road that morning in risk.

9

The prosecutor also addressed the violation-based theory: "Now, he violated multiple traffic violations. The illegal U-turn, the failing to stop, the driving over 100, the driving over 65 miles per hour. There was more than just three."

Defense counsel made two arguments in closing regarding the reckless evasion count. First, counsel challenged Officer Kuhl's credibility:

> [Y]ou have to rely on the testimony mainly of Officer Kuhl; right? Because he's the one that supposedly saw the weaving, the speeding, the reckless driving, all of that. You have to believe everything he says.
>
> [¶] . . . [¶]
>
> But if you don't completely believe him, then you have reasonable doubt as to everything of what Officer Kuhl said, including the driving on the shoulder, the speeding. And you heard from Officer Peterson. She didn't see any of that.

Second, Pollard's lawyer invited the jury to convict only on the lesser included offense of simple evasion:

> Let's say you did find that somehow Mr. Pollard evaded somehow. You do have a lesser-included offense. . . . [T]he difference is that . . . the greater offense, is that you need wanton and willful disregard for public safety and property or three violations. In the lesser-included offense, you don't have that requirement. That's the difference. So maybe you don't find him guilty on the greater offense. Maybe Mr. Pollard just simply didn't stop, and that would be the lesser offense.

In rebuttal, the prosecutor urged the jury to "think about the greater offense" because "[t]here was wanton disregard for . . . public safety" and "[t]here w[ere] also three traffic violations."

10

## C. Analysis

The parties agree — as do we — that the trial court erred by instructing the jury that a violation of section 21806 could be used as one of the three traffic violations to establish willful and wanton disregard for safety under section 2800.2, subdivision (b). (See *Diaz*, *supra*, 125 Cal.App.4th at p. 1491.) The issue, then, is whether this instructional error was prejudicial. We conclude it was not.

We review the instructional error at issue here under the *Chapman* "beyond a reasonable doubt" standard. (*Diaz*, *supra*, 125 Cal.App.4th at pp. 1491–1492; see *People v. Jasso* (2025) 17 Cal.5th 646, 689 (*Jasso*) ["The standard of prejudice applicable to alternative-theory error is the same [*Chapman*] beyond a reasonable doubt standard that generally applies to misdescriptions of the elements of an offense."]; *In re Lopez* (2023) 14 Cal.5th 562, 585 (*Lopez*).) " 'Under this standard, a conviction must be reversed unless a reviewing court, "after examining the entire cause, including the evidence, and considering all relevant circumstances, . . . determines the error was harmless beyond a reasonable doubt." ' " (*Jasso*, at p. 689.)

Applying this standard, the *Diaz* court found the same instructional error at issue here to be prejudicial under the evidence and circumstances of that case. (*Diaz*, *supra*, 125 Cal.App.4th at pp. 1491–1492.) The prosecution in *Diaz* relied on three alleged traffic violations — the minimum allowed — to satisfy the violation-based theory of reckless evasion. (*Id*. at p. 1488.) After the *Diaz* court held that one of those predicate violations — failing to yield in violation of section 21806 — "cannot be utilized as one of the three traffic violations to establish the element of willful or wanton disregard for . . . safety . . . under . . . section 2800.2[, subdivision ](b)" (*id*. at p. 1491), the People argued the error was harmless because, under the definitional theory,

11

"no reasonable jury could have found that [the defendant] drove safely" (*id*. at p. 1492).

Finding the question to be "a close one," the *Diaz* court concluded the error was prejudicial.  (*Diaz*, *supra*, 125 Cal.App.4th at p. 1492.)  In favor of finding the error harmless, the *Diaz* court acknowledged that the defendant "drove for 29 miles at night along curving mountainous roads, at speeds between 55 and 75 miles per hour"; "changed lanes frequently as he passed cars and trucks"; and created a "danger to other vehicles" and to law enforcement who deployed "a spike strip to stop [the defendant]'s car."  (*Ibid*.)  On the other hand, the *Diaz* court found that "the evidence presented a factual issue on the safety of [the defendant]'s driving" because "[t]here were no accidents or 'near misses' during the pursuit"; the defendant "drove around 1:20 a.m., in light or light to moderate traffic, at speeds which approximated that of other vehicles on the road"; and defense counsel "argued to the jury that, while [the defendant] should have pulled over for the officers, the way he drove did not establish the element of willful or wanton disregard for safety."  (*Ibid*.)

In contrast to *Diaz*, here the " ' "the evidence . . . and . . . all relevant circumstances" ' " (*Jasso*, *supra*, 17 Cal.5th at p. 689) do not present a close call on the question of prejudice.  First, whereas the prosecution in *Diaz* relied on only three traffic violations to satisfy the violation-based theory (*Diaz*, *supra*, 125 Cal.App.4th at p. 1488), the prosecution here relied on five traffic violations.  Therefore, even after disregarding the invalid section 21806 predicate, there were still four valid violations to support the violation-based theory.  Notably, Pollard offered the jury no principled basis on which to find that he violated some Vehicle Code provisions and not others.  Instead, he gave the jury the all-or-nothing choice of either believing

or disbelieving Officer Kuhl's uncontradicted testimony that Pollard committed all the qualifying traffic violations. (Cf. *People v. Kraft* (2000) 23 Cal.4th 978, 1063 [the "*unexplainable* rejection of the prosecution's evidence" does not constitute substantial evidence for purposes of requiring an instruction on a lesser included offense (italics added)].)

By convicting Pollard, the jury necessarily believed Officer Kuhl's testimony. And without a principled basis for distinguishing between predicate traffic violations, we are satisfied beyond a reasonable doubt that even if the jury relied on the invalid section 21806 predicate, the jury *also* relied on four additional valid predicates. (See *Lopez*, *supra*, 14 Cal.5th at p. 582 ["the fact that the prosecutor argued, or the jury considered, an invalid alternate theory is not dispositive when conducting a harmless error analysis"].)

Second, unlike the defense attorney in *Diaz*, Pollard's trial counsel did *not* argue the driving that Officer Kuhl described did not reflect willful and wanton disregard for safety under the definitional approach. (See *Diaz*, *supra*, 125 Cal.App.4th at p. 1492.) Instead, as noted, Pollard merely argued that the driving Officer Kuhl described *did not happen*. In doing so, Pollard effectively conceded that if the jury believed Officer Kuhl, then the driving he described satisfied the definitional theory of willful and wanton disregard. "One situation in which instructional error [misdescribing or] removing an element of the crime from the jury's consideration has been deemed harmless is where the defendant concedes or admits that element" — even if the defendant does "not *affirmatively* admit" the issue but only "*effectively* concede[s]" it. (*People v. Flood* (1998) 18 Cal.4th 470, 504, italics added; see *People v. Oyler* (2025) 17 Cal.5th 756, 841 [where the key issue at trial was *who* started a fire that killed five firefighters, the causation question of

13

whether the arsonist "was the 'actual killer' who personally and directly caused the victims' deaths" for purposes of felony-murder liability "was *effectively* uncontested" for purposes of finding omitted-element error harmless under *Chapman* (italics added)].) A defendant effectively concedes an issue by, for example, "never refer[ing] to th[e] element of the crime during the trial," "not argu[ing] to the jury that the prosecution had failed to prove th[e] element beyond a reasonable doubt," "not ask[ing] that the issue even be considered by the jury," "present[ing] no evidence regarding the . . . element," "fail[ing] to dispute the prosecution's evidence regarding the issue," or by requesting a jury instruction that addresses the element. (*Flood*, at pp. 504–505.) Considering these factors, Pollard effectively conceded that if the jury believed Officer Kuhl, then the definitional theory was satisfied.

Finally, Pollard's driving here — as established by Officer Kuhl's uncontradicted testimony — was significantly more dangerous than the driving that presented a close question in *Diaz*. (See *Diaz*, *supra*, 125 Cal.App.4th at p. 1492.) After the pursuit began, Pollard had a near-miss with another vehicle when he made an unsafe turn out of a parking lot. (Cf. *ibid*. ["There were no accidents or 'near misses' "].) Pollard then ran a red traffic signal at the intersection to the onramp to highway 163. (Cf. *ibid*. [distinguishing cases finding harmless error where drivers, among other things, ran red traffic signals and stop signs].) He initially accelerated to about 80 miles per hour — which Officer Kuhl testified was "concerning behavior" because of the "increased opportunity for a collision" — before further accelerating to 125 miles per hour and "weav[ing] around traffic," crossing four traffic lanes, and "passing on the right shoulder." (Cf. *ibid*. [noting the defendant drove mostly "at speeds between 55 and 75 miles per

14

hour, at speeds which approximated that of other vehicles on the road"].)  All of this led Officer Kuhl to terminate the pursuit to protect "public safety."

On this record, we conclude the trial court's instructional error was harmless beyond a reasonable doubt.

## IV.  DISPOSITION

The judgment is affirmed.


RUBIN, J.

WE CONCUR:


DATO, Acting P. J.


KELETY, J.

15